UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JOSE AGUILAR, PRIMITIVO AGUILAR, JOAQUIN
ALMAZAN, ALBERTO BARRANCO, RAMIRO
CASA, JOAQUIN CORONA, HUGO FLORES,
JAVIER FLORES, VOON ONN, JORGE OREA,
AGUSTIN RAMALES, ANGEL ZAMBRANO, and
JUN ZHAO,

                Plaintiffs,

                REPORT & RECOMMENDATION

      - against -

                No. 06-CV-6790 (SLT) (RER)

E-Z SUPPLY CORP., SUNRISE PLUS CORP., and
LESTER WEN,

                Defendants.
----------------------------------------------------------------X
**RAMON E. REYES, JR., U.S.M.J.:**

INTRODUCTION

      The above named individual plaintiffs (collectively "Plaintiffs") filed this action against defendants E-Z Supply Corp. ("E-Z Supply"), Sunrise Plus Corp. ("Sunrise"), and Lester Wen under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.*, and New York Labor Law §190 *et seq*. (McKinney 2008). (Docket Entry 1.) Plaintiffs allege that they were not properly compensated while employed by E-Z Supply and seek unpaid overtime wages and liquidated damages. (*Id*. ¶¶ 22-29.) Previously, a default judgment in the amount of $1,068,800 was entered against E-Z Supply in light of its failure to answer the complaint. (Docket Entries 45, 48.) On July 15, 2008, Plaintiffs filed a summary judgment motion against Sunrise, arguing that Sunrise is the alter ego of E-Z Supply, and was therefore bound by the default judgment. (Docket Entries 52-62, 66-67.) The Honorable Sandra L. Townes referred Plaintiffs' summary judgment motion to this Court for a Report and Recommendation ("R&R"). (Docket Entry 68.) In my R&R, I

found that Sunrise was the alter ego of E-Z Supply and, as such, was liable for the default judgment against E-Z Supply. (Docket Entry 70 at 7-13.) Although I concluded that Sunrise had willfully concealed its status as the alter ego of E-Z Supply when E-Z Supply failed to answer the complaint, I recommended vacating the default judgment against E-Z Supply to allow Sunrise to litigate this case. (Docket Entry 70 at 16.) I also recommended making the vacatur of the default judgment conditional upon payment by the Defendants of all attorneys' fees and costs related to the default judgment.

In a Memorandum and Order dated March 31, 2009, Judge Townes adopted the R&R in full and directed the parties to confer regarding the amounts to be awarded. (Docket Entry 74.) Because the parties could not agree on the appropriate amounts, Plaintiffs' counsel submitted an accounting of fees and costs supported by reference to contemporary time records in the amount of $16,875.00. (Docket Entries 75 & 76.) Defendants argue that the amount is over-inclusive and excessive. (*See* Docket Entry 78 at ¶¶ 11 & 21.) I have carefully reviewed both parties' submissions, and for the reasons specified below respectfully recommend that the Court award Plaintiffs' legal fees and costs in the amount of $14,540.50.

I.  <u>Attorneys' Fees</u>

The Court of Appeals for the Second Circuit uses the lodestar method to determine reasonable attorneys' fees. *Seitzman v. Sun Life Assurance Co.,* 311 F.3d 477, 487 (2d Cir. 2002). Accordingly, fees are calculated by taking "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Pugach v. M&T Morg. Corp.*, 564 F. Supp. 2d 153, 155 (E.D.N.Y. 2008) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)); *see also Cabrera v. Jakabovitz*, 24 F.3d 372, 393 (2d Cir. 1994) (emphasizing that a court's "choice of

2

rates is well within [its] discretion"). "Once that initial calculation [called the lodestar] has been made, the district court may, in its discretion, increase [it] by adding a multiplier based on 'other less objective factors.'" *In re Dreyfus Aggressive Growth Mut. Fund Litigation,* No. 98-CV-4318, 2001 WL 709262, at *4 n.6 (S.D.N.Y. June 21, 2001). *Cf. Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008) (finding that the term "lodestar" should be replaced by the term "presumptively reasonable fee," but emphasizing a trial court's "considerable discretion" to consider all "case-specific variables" under an approach that is similar to the lodestar method). When considering case-specific variables in non-class action suits, courts in the Second Circuit follow the guidelines enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974) ("*Johnson* factors").[1] *See U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 415 (2d Cir. 1989) (finding that the *Johnson* factors are the standard in the Second Circuit).

A.  Reasonable Hourly Rate

To calculate the reasonable hourly rate, the Court looks to "what a reasonable, paying client would be willing to pay." *Trs. of United Teamster Fund v. J.B. Mufflers, Inc.*, No. 07-CV-1425, 2008 WL 2114955, at *4 (E.D.N.Y. May 19, 2008) (quoting *Arbor Hill*, 522 F.3d at 184). When determining this amount, the Court "bear[s] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Pugach*, 564 F. Supp. 2d at 155 (quoting *Arbor Hill*, 522 F.3d at 190). The party seeking attorneys' fees has the

---

[1] The twelve *Johnson* factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorneys' customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Arbor Hill*, 522 F.3d at 186 n.3 (quoting *Johnson*, 488 F.2d at 717-19).

burden of proving that the hourly rates that it requests are similar to the "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience and reputation." *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)) (internal quotation marks omitted). The relevant "community" is where the district court sits. *See Arbor Hill*, 522 F.3d at 190. The determination of the prevailing market rates may either be based on evidence submitted to the Court or upon the judge's own knowledge of hourly rates charged in the community. *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1059 (2d Cir. 1989) (citations omitted); *Miele v. N.Y. State Teamsters Conf. Pension & Ret. Fund*, 831 F.2d 407, 409 (2d Cir. 1987). "Overall, hourly rates for attorneys approved in recent Eastern District of New York cases have ranged from $200 to $350 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates, and $70 to $80 for legal assistants." *Cho v. Koam Med. Servs. P.C.*, 524 F. Supp. 2d 202, 207 (E.D.N.Y. 2007) (citations omitted); *see also Expeditors Int'l. of Washington, Inc. v. Rubie's Costume Co., Inc.*, No. 03-CV-3333, 2007 WL 430096, at *2 (E.D.N.Y. Feb. 2, 2007) ("Hourly rates approved in recent Eastern District of New York cases have ranged from $200 to $375 for partners at law firms.").

In the instant case, Mr. Lichten requests an hourly rate of $350. Defendants claim that this amount is excessive. (*See* Docket Entry 78 at ¶22.) Mr. Lichten argues that this rate is reasonable because he graduated *cum laude* from Harvard Law School where he was General Editor of the *Harvard Civil Rights-Civil Liberties Law Review,* and because he has 19 years' experience in litigating labor and employment cases. The Court finds Mr. Lichten's rate reasonable. On two recent occasions, this Court has examined Mr. Lichten's credentials and

4

experience and determined his hourly rate to be reasonable. (Docket Entry 76 at 6; *Hildago v. Handyfat Trading Inc.*, 06-CV-6417, Order of 06/23/2008; and *Bernabe v. Giant Big Apple Beer Ltd.,* 06-CV-6708, Order of 10/18/2007.) Moreover, Mr. Lichten's suggested rate falls within the range of amounts approved in this district. *See Cho*, 524 F. Supp. 2d at 207; *see also Expeditors*, 2007 WL 430096 at *2.

B.      Reasonable Hours Expended

In determining the number of reasonable hours expended, the Second Circuit looks to "its experience generally as well as to the evidentiary submissions and arguments of the parties." *Gierlinger v. Gleason,* 160 F.3d 858, 875 (2d Cir. 1998) (citing *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992) (citations omitted)). The issue is "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Pugach*, 564 F. Supp. 2d at 159 (citing *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)). A district court must exclude hours that are "excessive, redundant, or otherwise unnecessary" to the litigation. *Pugach,* F. Supp. 2d at 159 (citing *Hensley*, 461 U.S. at 434).

The party seeking a fee award must provide documentation of the hours spent by counsel. *King v. STL Consulting, LLC*, No. 05-CV-2719 (SJ), 2006 WL 3335115, at *6 (E.D.N.Y. Oct. 3, 2006) (citations omitted). This documentation should be in the form of contemporaneously created records that specify the date, hours expended, and nature of the work done. *Kirsch v. Fleet St., Ltd.,* 148 F.3d 149, 173 (2d Cir. 1998) (citing numerous cases). However, "it is not required that counsel describe in great detail how billable time was spent; it is sufficient to identify the general subject matter of the time expenditures." *Aiello v. Town of Brookhaven*, No. 94-CV-2622, 2005 WL 1397202, at *2 (E.D.N.Y. June 13, 2005). Courts in the Eastern District

of New York have found that "daily time entries" are "sufficient to satisfy the time record requirement." *Pugach*, 564 F. Supp. 2d at 160. Here, Mr. Lichten submitted an accounting of his billable hours; each entry gives the date, the hours expended, and a general description of the nature of the work. (Docket Entry 76 at Ex. A.) According to the records submitted by Mr. Lichten, he logged 19.55 hours working on the default of E-Z Supply and 28.45 hours on the summary judgment motion. (Docket Entry 76 at Ex. A, "E-Z Supply Motion.")

1. <u>Determining Hours for Default Judgment</u>[2]

Courts in this Circuit are usually guided by the *Johnson* factors when reducing a fee award. *See U.S. Football League*, 887 F.2d at 408. In contrast, Defendants look to many of the factors listed in *In re Twinlab Corp. Securities Litigation*, 187 F. Supp. 2d 80, 84 (E.D.N.Y. 2002) ("Twinlab factors").[3] In *Twinlab*, the court held that attorneys who create a common fund in class action are entitled to a reasonable fee, set by the court, to be taken from the fund in the form of a percentage. *See Twinlab*, 187 F. Supp. 2d at 84; *see also Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 44 (2d Cir. 2000). The Second Circuit may favor this percentage method when determining class action cases (*Twinlab*, 187 F. Supp. 2d at 85); however, in non-class action suits, courts look to the lodestar method when calculating attorneys' fees. *Seitzman*, 311 F.3d at 487.

---

[2] Defendants, in their recitation of the facts, claim that only 13 entries in Mr. Lichten's time sheets are related to the default judgment. (Docket Entry 78 at ¶ 4.) Only three of the entries in Defendants' 13 do not contain the descriptor "default" (*i.e.* "Draft default papers," "Legal Research re: default," but not "Phone call with client re: motion," "Review brief," or "Research re: motion time limit"). (Docket Entry 78 at ¶ 4.) Defendants do not provide a rationale for their selection, but it may be that Defendants meant to include only those hours tagged specifically by Mr. Lichten as relating to the default judgment. Regardless of the Defendants' rationale, this is an overly narrow reading of the Court's order to award fees for any costs "related to the default judgment." (Docket Entries 70 at 26 & 74 at 5.)

[3] Defendants list these factors as "(1) the time and expertise required of counsel, (2) the magnitude and complexities of litigation, (3) the risks involved in the litigation, (4) the quality of the representation, (5) the requested fee in relation to the settlement, (6) public policy considerations." (Docket Entry 78 at ¶ 5.)

In spite of the differences between *Twinlab* and the present case, the criteria employed by Defendants when considering the award amount are sometimes similar to those more frequently employed by the court when considering non-class action cases. *See Twinlab,* 187 F. Supp. 2d at 83. Ultimately, after considering all of Defendants' arguments, some of which I discuss below, I conclude that the number of hours used in the lodestar calculation for Mr. Lichten's default judgment work should be reduced by 5%, to 18.57 hours. The Court, therefore, recommends that Mr. Lichten be awarded $6,499.50 in fees for his work on the default judgment.

a. <u>Contingency and Risk</u>

Defendants suggest that the Court consider the "risks involved in the litigation." Mr. Lichten was not working on a contingency basis. Defendants claim that "when there is no apparent contingency risk, the courts generally will take the view against awarding a substantial fee." (Docket Entry 78 at ¶ 18.) This factor is similar to *Johnson* factor (6): a court should consider "whether the fee is fixed or contingent." *Johnson*, 488 F.2d at 718. Courts have used this factor as a way of addressing their concern regarding awarding *very large* fees. *See Rodriquez v. Bowen,* 865 F.2d 739, (6th Cir. 1989). For example, in *Goldberger*, the court lowered the award for attorneys working on a contingency fee basis of 25% of the common fund to 4% of the common fund, from $13.5 million to $2.1 million. (*See* Docket Entry 78 at ¶ 20 (citing *Goldberger*, 209 F.3d at 45-47).) Similarly, in *Twinlab*, the court reduced a fee for attorneys working on contingency basis from 33.5% of the common fund to 12% of the common fund, from $8.8 to $3.1 million (figures rounded). *Twinlab*, 187 F. Supp. at 88, 82. Even if Mr. Lichten's fees were taken in percentage form based on contingency, which they were not, the amount he requests does not approach the amounts at issue in cases where courts have acted on

7

concerns regarding *very large* fees. In short, this Court cannot agree with Defendants when they claim that, because Mr. Lichten had no contingency risk, the fee award should be reduced.

b.  Quality of Representation

Defendants argue that the Court should consider the quality of the representation and decrease the award amount. This factor is similar to that found in *Johnson* (3): "the level of skill required to perform the service properly." *Johnson*, 488 F.2d at 718. Defendants cite *Twinlab*, in which the court determined that a lodestar of $2,462,537.50 was excessive because "counsel calculated the lodestar using partner billing rates for a large percent of the time worked on the case, regardless of whether an associate or paralegal could have performed the work at a fraction of the price." (Docket Entry 78 at ¶ 22 (citing *Twinlab*, 187 F. Supp. at 85).) In dealing with such excess billing, the court has "deduct[ed] a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Pugach*, 564 F. Supp. 2d at 163 (citing *Kirsch,* 148 F.3d at 173). In the instant case, Mr. Lichten completed all of the tasks listed on his time sheets himself. (*See* Docket Entry 76 at ¶ 4.) Time spent for administrative tasks should not be billed at the same rate as time in which more professional skills were being used. *See Blank v. Talley Industries, Inc.* 390 F. Supp. 1, 2 (S.D.N.Y. 1975). On the one hand, this Court finds that less experienced staff could have done some of the tasks Mr. Lichten took on himself. For example, Mr. Lichten reports that he carried out the following tasks: "Draft subpoena: 0.40," Review aff service: 0.10," "Draft Ma proof of service: 0.75," "File Review default motion: 0.40," and "Draft cos: 0.20." (Docket Entry 76 at Ex. A, "E-Z Supply Motion.") On the other hand, Mr. Lichten appears to have expended a minimum amount of time to complete each task billed for (almost 24% of the tasks were completed in under 10 minutes (16

entries out of 67 total entries)). On the whole, I feel a slight reduction is appropriate. Therefore, the hours considered under the default judgment should be reduced by 5%, to 18.57 hours.

c. Complexity

Defendants contend that the amount requested by Mr. Lichten should be reduced because the default judgment motion was not sufficiently complex to warrant so much of Mr. Lichten's time. Defendants state that Mr. Lichten "did not invest significant time and resources in depositions, trial or appeal," and "it is hardly complex to articulate a [sic] an uncontested motion for default judgment . . . [this is not] work of any magnitude." (Docket Entry 78 at ¶ 18 (citing *Twinlab*, 187 F. Supp. 2d at 84 (E.D.N.Y. 2002)) & at ¶ 17.) The Second Circuit has held that "the fact that a case is straightforward is not grounds to reduce a lodestar award." *Di Filippo v. Morizio,* 759 F.2d 231, 235 (2d Cir.1985) (citing *Blum,* 465 U.S. 886). Courts in the Second Circuit reconsider the lodestar amount only when the number of billable hours involved is unreasonable (for example, 42 hours spent on a single motion for the award of attorneys' fees, *see Di Filippo*, 759 F.2d at 236). Here, the total hours submitted by Mr. Lichten for default judgment work amounted to 19.55 (before being reduced by the Court). This may seem very large for a standard default judgment; however, in this case, that total includes time spent drafting a memorandum of law for the Court (Docket Entry 30), time spent drafting the motion for default and drafting an accompanying affidavit (Docket Entry 31); and time spent drafting letters regarding the status of the default judgment litigation in with the court, and contesting the Defendants' objections to the R&R of March 13, 2008. (Docket Entries 38 & 42.) In short, Mr. Lichten's hours will not be reduced because they were billed *merely* in the context of the default judgment.

d.  Duplicative Time Entries

Defendants argue that some entries listed by Mr. Lichten for his default judgment work are "questionable" and "duplicated."[4] (Docket Entry 78 at ¶ 5.) Defendants point to the following entries, among others: "8/17/2007: Draft default papers: 1.40; Draft brief default: 3.00; File Review Default Motion: 0.40." (Docket Entry 78 at ¶ 5.) Defendants claim that the work these entries represent is duplicated, in part, by: "9/5/2007: Draft default motion: 1.35"; "9/5/2007: Draft default memo: 0.65; 9/7/2007: Draft default motion 0.20; and 9/7/2007: Draft default motion: 0.25." (Docket Entry 78 at ¶ 6.) The Court finds that these entries document Mr. Lichten's time spent drafting several submissions: a default judgment motion with an affidavit and exhibits, and a memorandum in support of the default judgment motion. (Docket Entries 31 & 30.) The fact that Mr. Lichten described his work similarly when he entered his time for the drafting of these documents does not establish that his entries are duplicative. Moreover, the total amount of time billed for these documents is quite low. This suggests that Mr. Lichten did not double bill for these tasks. Therefore, the Court rejects this argument.

2.  Summary Judgment

Defendants' memorandum regarding attorneys' fees suggests that Mr. Lichten's hours billed for the summary judgment should not be considered part of the costs "related" to the default judgment. (Docket Entry 78 at ¶ 10.) Judge Townes adopted the undersigned's R&R in

---

[4] Mr. Lichten submitted two documents containing different charts of his billable hours for his work on this case. (Docket Entries 71 at Ex. A & 76 at Ex. A.) Defendants point out that the total number of hours billed differs for these two submissions. One reason for this discrepancy is that, in his second submission, Mr. Lichten included 2.75 hours to account for work completed after the first submission. The only other discrepancy works in the *Defendants' favor*: in the second submission, Mr. Lichten removed one entry for 1.5 hours on 6/29/07 and added .05 hours to another charge on 3/7/2009. Ultimately, Mr. Lichten listed *less hours* in his second submission for the work previously billed for in the first submission. The Court cannot agree with Defendants that Mr. Lichten was not acting with "candor." (Docket Entry 77 at ¶ 28.) The Court cautions Mr. Emengo from making such unfounded accusations against opposing counsel in the future.

full. (Docket Entry 74.) In that R&R, vacatur was to be "contingent upon the payment to [P]laintiff[s] of all fees and costs *related* to the default judgment. . . ." (Docket Entries 70 at 26 & 74 at 5.) Plaintiffs' summary judgment motion, seeking to apply E-Z Supply's default judgment to Sunrise, came into being as a result of the default judgment against Sunrise's alter ego, E-Z Supply. Therefore, the summary judgment motion is certainly related to the default judgment.[5]

However, the Court acknowledges that the summary judgment motion did not relate solely to the default judgment. The memorandum in support of the summary judgment motion is broken into two parts: Part I and Part II. Mr. Lichten's work related to Part I, which argues that the summary judgment motion should be granted against Sunrise as an alter ego of E-Z Supply, should be considered in the award of attorneys' fees. (*See* Docket Entry 62 at 2-6.) However, any summary judgment motion work on issues not related to the default (*i.e.*, Part II, which argues for the dismissal of Defendants' counterclaims) should not be included in the attorneys' fees award. (*See* Docket Entry 62 at 6-10.) Although Mr. Lichten lists the time he spent on the summary judgment motion separately from the default judgment work, the entries are often vague. For example, "Draft sj brief" on 4/2/2008, 4/22/2008, 4/23/2008 and "Draft brief sj" on 6/2/2008. (Docket Entry 76 at Ex. A., "Sunrise Motion.") Thus, the Court cannot discern with sufficient accuracy which entries relate to Part I and which relate to Part II. Vague descriptions, however, are not fatal to fee applications. "[I]t is not required that counsel describe in great detail how billable time was spent; it is sufficient to identify the general subject matter of the time expenditures." *Aiello*, 2005 WL 1397202, at *2. In such a situation, courts may reduce hours by

---

[5] Such a condition on vacatur certainly falls within the confines of Rule 60(b)'s "just terms." FED. R. CIV. P. 60(b). In fact, Plaintiff's summary judgment was entirely foreseeable. Defendants were on notice that Plaintiffs were going to use the default judgment against E-Z Supply against Sunrise. (Docket Entry 34, which states: "Plaintiffs have advised the Court that they intend to move for summary judgment as soon as Judge Townes decides the pending motion for default judgment against E-Z Supply Corporation.")

a percentage. *U.S. Football League*, 887 F.2d at 415 (in which lodestar was reduced by 30% due to vague documentation of time entries). In this case, the portion of the summary judgment motion related to dismissal of the Plaintiffs' counterclaims accounts for approximately 20% of the motion. Accordingly, the Court reduces the number of hours Mr. Lichten lists under "Sunrise Motion" by 20%, to 22.76. This Court therefore recommends that Mr. Lichten's firm be awarded $7,966.00 in fees for work on the summary judgment motion.

II.     Costs

Plaintiffs also request reimbursement for a $75.00 court reporting cancellation fee incurred when Ms Eva Wen Ma (E-Z Supply's purportedly sole shareholder) ignored a deposition subpoena. (Docket Entry 76 at Ex. B.) Presumably, Ms. Ma was to give testimony regarding Sunrise's status as an alter ego of E-Z Supply. Defendants claim that this cancellation fee "has nothing to do with the motion for a default judgment which was predicated on a claimed failure [sic] E-Z Supply Corp., to respond to the originating process in this case, the summons." (Docket Entry 78 at ¶ 8.) Defendants are correct that the fee did not have to do with the default motion. However, the fee was incurred as a result of the default judgment. Because it is a result of the default, the cancellation fee falls under the District Court's order to reimburse Plaintiffs for "all fees and costs related to the default judgment." (Docket Entry 74 at 5.) Mr. Lichten should receive $75.00 in costs. *See also Leyse v. Corp Collection Servs., Inc.,* 545 F. Supp. 2d 334, 339 (S.D.N.Y. 2008).

## CONCLUSION

For the reasons set forth above, I recommend that the Court award $14,540.50 to Plaintiffs, comprising $14,465.50 in reasonable fees for work related to the default judgment and $75.00 to in costs to Mr. Lichten's firm.

Any objections to the recommendations made in this report must be filed with the Clerk of the Court and the Chambers of the Honorable Sandra L. Townes within ten business days of receiving this R&R. Failure to file timely objections may waive the right to appeal the District Court's Order. *See* U.S.C. §636(b)(1); FED. R. CIV. P. 6, 72; *Small v. Secretary of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

**Dated: June 22, 2009**
**Brooklyn, New York**

*Ramon E. Reyes, Jr.*
**Ramon E. Reyes, Jr.**
**United States Magistrate Judge**